**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| PATRICK THOMPSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:25-cv-01867-PTG/IDD |
| | ) | |
| BLOOMBERG INDUSTRY GROUP, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM IN OPPOSITION
TO DEFENDANT BLOOMBERG INDUSTRY GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT</u>**

Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
Heather Murray, VA Bar No. 98648
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
        kherrmann@erlichlawoffice.com
        hmurray@erlichlawoffice.com


*Counsel for Plaintiff*

i

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………..……1

RESPONSE TO INDG'S STATEMENT OF MATERIAL FACTS…..…………….…..………1

ARGUMENT……………………………………………………………………………14

I.    GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S FAILURE TO ACCOMMODATE CLAIMS……………………………………………….……………..14

    A.  Mr. Thompson is Disabled Under the ADA…………………,,,,.….…16

        1.  *Disability is Intended to Be Defined Broadly Under the ADAAA………………………………………………….16*

        2.  *A Deficiency in Medical Documentation Does Not Alter the Disability Analysis Under the Law…………………………..17*

        3.  *Any Personal Benefit Mr. Thompson Stood to Gain from Telework is Ancillary to His Need for Accommodation Arising From His Disability…………………………………18*

        4.  *At Minimum, Genuine Disputed Facts Remain as to Whether Mr. Thompson is Disabled Within the Meaning of the ADA………………………………………………..…..18*

    B.  INDG Caused the Breakdown in the Interactive Process that Resulted in the Failure to Accommodate Mr. Thompson ……...…..19

        1.  *Mr. Thompson Initiated the Interactive Process by Making a Reasonable Request for Accommodation…………20*

        2.  *INDG Sabotaged the Interactive Process to Avoid Its Duties Pursuant to the ADA and VHRA…………..…………21*

    C.  In-Office Attendance Was Not an Essential Function of Mr. Thompson's Position……………………………..……………..…..22

II.    GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S DISCRIMINATION CLAIMS…....…23

    A.  Mr. Thompson Was Meeting INDG's Legitimate Expectations at the Time of His Termination……………….…………………..…24

ii

**B.  The Circumstances of Mr. Thompson's Termination Raise an Inference of Discrimination**……………………………….………24

**C.  INDG's Stated Reason for Mr. Thompson's Termination is Pretextual and Does Not Amount to a Legitimate, Non-Discriminatory Reason** …………………….…………….……25

**III.    GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S RETALIATION CLAIMS**…………...25

**A.  The Circumstances Surrounding INDG's Termination of Mr. Thompson Raise an Inference of Retaliation**………………...……26

**B.  INDG's Stated Reason for Mr. Thompson's Termination Is Pretextual and Does Not Amount to a Legitimate, Non-Retaliatory Reason**……………………………………………………27

**CONCLUSION**………………………….………………………………………...….27

## TABLE OF AUTHORITIES

***Cases***

*Cook v. United Parcel Serv., Inc.*,
2022 WL 1090251 (4th Cir. 2022)……………………………………………...……22

*Garcia-Ayala v. Lederle Parenterals, Inc.*,
212 F.3d 638 (1st Cir. 2000)……………………………………………………………20

*Jacobs v. N.C. Admin. Office of the Courts*,
780 F.3d 562 (4th Cir. 2015)…………………………………………...……*passim*

*Kelly v. Town of Abingdon*,
90 F.4th 158 (4th Cir. 2024)……………………………………………….…..…19

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)……………………………………………...……23, 25

*O'Meara v. Wormuth*,
2022 WL 67321 (E.D. Va. Jan. 2022)………………………………..…………….…22

*Pandazides v. Va. Bd. of Educ.*,
13 F.3d 823 (4th Cir. 1994)……………………………………………………....20

*Reyazuddin v. Montgomery Cty., Maryland*,
789 F.3d 407 (4th Cir. 2015)………………………………………………………..20

*Rhoads v. F.D.I.C.*,
257 F.3d 373 (4th Cir. 2001)……………………………………………….……15

*Serrano v. City of Arlington*,
986 F.Supp. 992 (E.D. Va. 1997)…………………………………………………22

*Tarquinio v. Johns Hopkins University Applied Physics Lab*,
141 F.4th 568 (4th Cir. 2025)…………………………………………………...19

*Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*,
31 F.3d 209 (4th Cir. 1994)……………………………………………….……22

*Williams v. Virginia Polytechnic Institute & State University*,
451 F.Supp.3d 467 (E.D. Va. 2020)……………………………………………………20

*Wilson v. Dollar General Corp.*
717 F.3d 337 (4th Cir. 2013)……………………………..………………………14

iv

*Rules*

Fed. R. Civ. P. 56(c)……………………………………………………………………*passim*

*Statutes*

Va. Code Ann. § 2.2-3900, *et seq*……………………………………………………………1

42 U.S.C. § 12101, *et seq*……………………………………………………………………1

29 C.F.R. § 1630.1(c)(4)……………………………………………………………………16

29 C.F.R . § 1630.2(n)(3)……………………………………………………………………22

*Administrative Guidance*

Enforcement Guidance: Disability-related Inquiries and Medical Examinations of
Employees Under the ADA, 2000 WL 33407181. …………………………………………17

Plaintiff Patrick Thompson ("Plaintiff" or "Mr. Thompson"), by and through his counsel, opposes the Defendant Bloomberg Industry Group's ("Defendant" or "INDG") Motion for Summary Judgment and submits this memorandum.

## INTRODUCTION

Mr. Thompson brings a total of six claims against INDG: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) failure to accommodate in violation of the ADA; (3) retaliation in violation of the ADA; (4) disability discrimination in violation of the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900, *et seq.*; (5) failure to accommodate in violation of the VHRA; and (6) retaliation in violation of the VHRA. Defendant INDG is not entitled to summary judgment with respect to any of Mr. Thompson's claims. Defendant's Motion for Summary Judgment should be denied.

## DEFENDANT'S LISTED STATEMENT OF MATERIAL FACTS

1.      Partially disputed. Defendant has not shown that there was any formal policy requiring three days of in-office attendance per week. INDG's corporate 30(b)(6) designee, Stacey-Ann Jones, testified that the three day in-office policy was a "practice that was followed," rather than a formal written policy. Def. Ex. 1 at 11:11-18. Mr. Thompson testified that he has "never seen a fully comprehensive policy of attendance." *See* Thompson Deposition Transcript ("Pl. Dep. Tr."), attached as Exhibit A, at 42:3-8.

2.      Undisputed.

3.      Disputed. In-office attendance is not listed as an essential function for Mr. Thompson's position, Product Manager 2. *See* Bloomberg Job Profile for Product Manager 2,

attached as Exhibit B. When asked, INDG's corporate designee agreed that the "Will Do" portion of Exhibit B—which does not list on-site work—captured the essential functions of Mr. Thompson's job. Def. Ex. 1 at 35:14-20.

4.        Undisputed.

5.        Disputed. As discussed *supra*, Defendant has not shown a formal written policy requiring three days of in-person work. Mr. Thompson stated he never saw a comprehensive attendance policy. Ex. A (Pl. Dep. Tr.) at 42:3-8.

6.        Partially disputed. Defendant's Exhibit 2 does not specify to which INDG employees this change is intended to apply. Mr. Thompson disputes this change having been intended to apply to all INDG employees, regardless of whether they had a reasonable accommodation or were granted some other exception that permitted them to telework. Ex. A (Pl. Dep. Tr.) at 42:3-8.

Jones testified that such exception to any requirement for in-office work did exist for employees "who were remote by reasons of their employment terms [or] grandfathered into remote status." 30(b)(6) Deposition of Stacey-Ann Alecia Jones ("Jones Dep. Tr."), attached hereto as Exhibit H, at 14:7-22:17. Defendant had authority to make exceptions to any requirement or policy and did, in fact, grant those exceptions. *Id.* (listing examples of individuals for whom such exceptions were granted).

7.        Partially disputed.  Mr. Thompson testified that "there was an expectation that folks be in the office for four days a week unless you've got an exception." Ex. A (Pl. Dep. Tr.) at 45:6-12. Mr. Thompson further testified that his direct supervisor, Will Matthews ("Matthews"), permitted him to work from home from January of 2024 into February 2024. *Id.* at 44:12-19.

2

8.    Undisputed.

9.    Undisputed.

10.    Partially disputed. Mr. Thompson does not dispute that Mr. Matthews had three other direct reports who appeared in the office four days per week. Mr. Thompson disputes that they did so pursuant to any formal policy enforced by INDG. Ex. A (Pl. Dep. Tr.) at 42:3-8.

11.    Disputed. Mr. Thompson disputes the note referenced by Defendant as representing a finding of the EEOC versus a note on of a statement made or position taken by Defendant during the investigation. Such notes are not evidence of any final determination or conclusion made by the EEOC.

The EEOC issued a "Determination and Notice of Rights" to Mr. Thompson on July 28, 2025. The Determination specifically states "the EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of this statute . . ." [t]he EEOC makes no findings as to the merits." *See* "Determination and Notice of Rights" attached to this filing as Exhibit C.

12.    Partially disputed. *See* paragraphs 6 and 7, *supra*.

13.    Undisputed.

14.    Undisputed.

15.    Undisputed.

16.    Undisputed.

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    Undisputed.

3

21.     Partially disputed. Mr. Thompson does not dispute that he performed hands-on work for clients in their homes as part of his work for Your Home Heroes. He disputes having performed this hands-on work prior to his termination by INDG—or at least having done so in more than a *de minimus* amount. Ex. A (Pl. Dep. Tr.) at 175:18-176:13. The deposition testimony of Mr. Thompson cited by Defendant does not establish that he performed hands-on work for Your Home Heroes prior to his termination. *See* Def. Ex. 6 at 95:7-13.

22.     Undisputed.

23.     Undisputed.

24.     Undisputed.

25.     Partially disputed. Mr. Thompson agrees that Matthews permitted him to work remotely while his mother underwent treatment but disagrees with this approval having been granted on a "temporary, limited basis . . . during the first quarter of 2024" only as Defendant contends. The deposition testimony of Matthews relied upon by Defendant does not mention any such time limitation, Def. Ex. 8 at 16:8 – 17:14; nor does the testimony of Mr. Thompson cited by Defendant. *See* Def. Ex. 6 at 14:4-14.

Mr. Thompson had no way of knowing the timeline of the progression of his mother's cancer and requisite medical treatment at the outset of learning of her diagnosis. Rather, Mr. Thompson testified that Matthews told him to "do what you need to do to take care of your mom" while his mother was in treatment and granted him permission to work remotely "due to [his] mom's situation." Ex. A (Pl. Dep. Tr.) at 14:3-14:12.

26.     Undisputed.

27.     Undisputed.

28.     Undisputed.

4

29. Undisputed.

30. Partially disputed. Mr. Thompson does not dispute that testimony cited by Defendant regarding the events of January 2, 2024 and takes Defendant's statement as written in the context of that date.

31. Disputed. Mr. Thompson disputes INDG's characterization of his reasonable accommodation request as being "indefinite" as well as its statement that he "refused to return to the office." *See* heading to Section D, Def. Mot. for Summ. J. at 6. The portion of the testimony cited by Defendant provides only that he initially suggested full-time telework during the duration of his mother's illness. Def. Ex. 6 at 173:2-13. It does not provide that Mr. Thompson requested telework for an indefinite duration or refused an accommodation of telework to a lesser extent. *Id.*

Plaintiff testified to having told the Senior Human Resources Business Partner, Fatima Abdeldaim ("Abdeldaim") that he wanted "a majority of remote work" but stated that he would "come into the office as needed." Ex. A (Pl. Dep. Tr.) at 63:14-64:2. During his initial discussion about accommodation with Abdeldaim on January 11, 2024, Mr. Thompson told her ". . . I think what I want to do is apply for an ADA accommodation and be able to ideally work remotely for a short period . . ."). *See* Transcript of January 11, 2024 Call, attached as Exhibit D at 3:18-4:1.

32. Disputed. While Mr. Thompson never proposed a specific hybrid schedule, he shared his willingness to appear in-person at the office when the need arose with Abdeldaim. Ex. A (Pl. Dep. Tr.) at 71:14-72:4. Although Mr. Thompson advocated for a middle ground solution, Abdeldaim refused to discuss one with him. *Id.*

5

33.    Disputed. Mr. Thompson testified that he "wasn't asking for just full remote work forever" and that "once [his] symptoms improved, [he] was happy to go back to the office." Ex. A (Pl. Dep. Tr.) at 69:8-17. *See also* paragraph 31, *supra*.

34.    Partially disputed. Mr. Thompson does not dispute that Defendant asked him to fill out the accommodation request form; however, Mr. Thompson disputes as a matter of law Defendant's statement that INDG's obligations under the ADA could only be triggered by filling out a specific form.

35.    Undisputed.

36.    Undisputed.

37.    Partially disputed. Dr. Okereke's notes also state that Mr. Thompson reported to her office due to "depression / anxiety." *See* Notes of Dr. Okereke, attached hereto as Exhibit G at 528. Dr. Okereke's notes reflect that Mr. Thompson reported worsening issues with sleep, fatigue, and poor appetite over the last few months. *Id.* The visit notes reflect a diagnosis of "current moderate episode of major depressive disorder without prior episode." *Id.* at 529.

38.    Undisputed.

39.    Undisputed.

40.    Undisputed.

41.    Undisputed.

42.    Undisputed.

43.    Partially disputed. Mr. Thompson does not dispute that the "No" box is checked on the form. However, Licensed Clinical Social Worker ("LCSW") Sara Kodaras also wrote that Mr. Thompson was experiencing an increase in his symptoms of anxiety and depression. Def. Ex. 19 at 78. She wrote that "client indicates a daily struggle with anxiety symptoms at this

6

time." *Id*. Kodaras' responses indicate that Mr. Thompson struggled with a disability, regardless of the checked box.

44.     Partially disputed. Mr. Thompson does not dispute that the form contains the language cited by Defendant. Mr. Thompson notes that he was performing his work for INDG remotely at the time Kodaras completed this form on or about February 16, 2024.. He disputes any implication that his ability to perform his job as of February 16, 2024 indicates that he did not require accommodation.

45.     Undisputed.

46.     Disputed. Although the form does not use the term "remote work," Kodaras responded to the prompt on the form asking she "explain what prevents employee from returning to the office and provide specific recommendations for how the workplace environment could be further accommodate to support this employee's return to the office." Def. Ex. 19.

This language could reasonably be read as asking what prevented Mr. Thompson from returning to the office *in person*. Kodaras provided in response, "client indicates increased stress and anxious symptoms related to his work environment." *Id.* at 79. Kodaras' response does not include any recommendations for accommodations intended to facilitate Mr. Thompson's return to the office, suggesting she did not find his return appropriate at that time. *Id.*

47.     Disputed. *See* paragraph 46, *supra*.

48.     Undisputed.

49.     Partially disputed. Mr. Thompson does not dispute the content of the form. However, in response to a question asking for her to suggest accommodations, Kodaras wrote that it was up to the "Client's discretion as to how to handle his anxiety/depressive symptoms in the workplace." Def. Ex. 19 at 78. Her response indicates that Mr. Thompson did need

accommodations but that she would leave it to his discretion to work with his employer to determine an effective accommodation.

Mr. Thompson spoke to Abdeldaim about why the February 16, 2024 letter from Kodaras was deficient, and referred to the possibility she had checked the box "no" in error. Abdeldaim specifically instructed Mr. Thompson *not* to change the box checked on any subsequent medical documentation he submitted, stating it would be "eyebrow raising" for such a change to be made. Transcript of Call between Mr. Thompson and Abdeldaim on April 19, 2024, ("Apr. 19, 2024 Call Tr.") attached as Exhibit E, at 7:2-5.

50.     Partially disputed. *See* paragraph 44, *supra*.

51.     Undisputed.

52.     Disputed. *See* paragraph 46, *supra*.

53.     Disputed. *See* paragraph 47, *supra*.

54.     Undisputed.

55.     Partially disputed. As discussed *supra*, Kodaras' recommendation leaves open the possibility of remote work as an accommodation.

56.     Undisputed.

57.     Partially disputed. Mr. Thompson agrees he did not submit another form but notes that INDG did not only fail to request additional medical documentation in support of his request, but actively discouraged him from submitting any additional documentation. *See* discussion on the breakdown in the interactive process at Section I.B. *infra*.

58.     Undisputed.

59.     Undisputed.

60.     Undisputed.

8

61.    Undisputed.

62.    Undisputed.

63.    Partially disputed. Mr. Thompson does not contest that Abdeldaim made these statements. However, during the same conversation, Abdeldaim also told Mr. Thompson that she was not certain Mr. Thompson's ADA request would be approved—even though Mr. Thompson had not yet made any formal request or submitted any medical documentation in support. Ex. D at 7:17-22 ("My concern is that going the ADA route, I'm not certain it's going to be approved, which will frustrate you, right?"). Abdeldaim told Mr. Thompson to "leave ADA for something else. God forbid anything else come up." *Id.* at 8:21-22.

During this meeting, Abdeldaim also provided Mr. Thompson inaccurate information on when seeking an accommodation was appropriate. Specifically, Abdeldaim told Mr. Thompson:

| Ms. Abdeldaim: | . . . Accommodation is, you know, I hurt my foot and I may have to be out for two to three weeks, and I may need to work from home, or I may need some flexibility in my schedule. Can the company help me with that for those two to three weeks? |
| Mr. Thompson: | Yeah. |
| Ms. Abdeldaim: | And you don't have a timeframe. You know what I mean, like? |
| Mr. Thompson: | Yeah. |
| Ms. Abdeldaim: | It's a reasonable accommodation is what that - - the accommodation is for. |

*Id.* at 13:1-20.

64.    Undisputed.

65.    Undisputed.

66.    Undisputed.

9

67.     Partially disputed. Abdeldaim did not explain to Mr. Thompson what "specific/more detailed responses" meant or specify what additional information INDG required beyond asking that Kodaras "list their LCSW provider/license number." Def. Ex. 19 at 77.

68.     Undisputed.

69.     Undisputed.

70.     Partially disputed. Mr. Thompson testified that during February and March, his conversations with Matthews were primarily about work but that Matthews would remind Mr. Thompson that he was expected to be in the office four days per week. Ex. A (Pl. Dep. Tr.) at 84:16-85:12. Matthews also told Abdeldaim that he was "in no rush" to fire Mr. Thompson and that Mr. Thompson "was doing the work these past few months." Messages between Abdeldaim and Christina Correira, attached to this filing as Exhibit F, at 560.

71.     Partially disputed, to the extent the use of "attendance" implies Mr. Thompson was not performing his work during this period. Mr. Thompson continued to perform work for INDG, but did so remotely rather than in-person.

72.     Undisputed.

73.     Partially disputed. Abdeldaim told Mr. Thompson they were "engaging in the interactive process now" during the conversation (Def. Ex. 23 at 5:3-4), but her conduct did not comport with the affirmative requirements imposed on employers by the ADA.

Mr. Thompson disputes that Abdeldaim engaged in a good faith discussion or made any proposals regarding accommodations that were reasonably calculated to address the symptoms of his disabilities. *See generally* Def. Ex 23. Abdeldaim stated the form contained "no recommendations" (*Id*. at 11:4-6) despite Kodaras' clear recommendation, discussed *supra*, that

10

Mr. Thompson and INDG work together "to devise a plan that best meets the client's needs." Def. Ex 18 at 449.

74.     Partially disputed. Mr. Thompson does not dispute that Abdeldaim asked him a series of questions during this call, but the purpose of these questions is unclear. Def. Ex. 23, *generally*.

75.     While Mr. Thompson did not suggest a specific date in this meeting, he previously told Abdeldaim that he wanted to work remotely for a "a short period" as discussed *supra*. Ex. D at 3:18-4:1.

76.     Partially disputed. Mr. Thompson agrees Abdeldaim stated as described. Mr. Thompson disputes that her conclusion regarding the form was correct. *See* paras. 45 and 52, *supra*. Rather, the form submitted by Kodaras to which Abdeldaim refers provides only that Mr. Thompson's impairment does not limit his ability to perform the essential functions of his position. Def. Ex. 19. It does not, as INDG provides, state "be it in person or remote." *Id.*

77.     Partially disputed. Mr. Thompson does not dispute Abdeldaim having stated as described. However, in the second form submitted by Mr. Thompson, Kodaras recommended that INDG and Mr. Thompson work together to find a suitable accommodation, and Mr. Thompson did go on to describe the accommodation he sought. *See* Def. Ex. 18 at 489-90; Def. Ex. 23 at 11:19-21 ("I'm looking to continue kind of the accommodation we've had going on for the last three months"); *Id.* at 12:10-11 ("I've been working remotely for the last three months").

78.     Disputed. As discussed *supra*, Mr. Thompson denies that his request for remote work was indefinite. Further, Mr. Thompson disputes that INDG proposed a meaningful or effective alternate accommodation. INDG's alleged alternative accommodation does not meet the affirmative requirements imposed by the ADA because requiring a gradual return to the

11

office over the course of one week was not reasonably calculated to address the symptoms of Mr. Thompson's disability. Def. Ex. 24 at INDG_000115.

79.     Partially disputed. Mr. Thompson disputes that he requested indefinite remote work, as discussed *supra*.

80.     Undisputed.

81.     Undisputed.

82.     Partially disputed. Defendant accurately characterizes the content of Mr. Thompson's conversation with Abdeldaim; however, Mr. Thompson disputes that INDG evaluated his provider's form in good faith or cohesively, as discussed, *supra*. In the meeting wherein Abdeldaim declined Mr. Thompson's request, Abdeldaim described her reading of the form as follows:

| | |
|---|---|
| Ms. Abdeldaim: | The form just was filled out in a way that kind of said, "He's good," which is a little concerning. You know what I mean? Especially considering your request. |
| | . . . . |
| Mr. Thompson: | Uh-huh. |
| Ms. Abdeldaim: | - - that says he's doing well, he's fine. So it's more than just that one box. So it's not just for you to submit another form after we talked and I told you why we denied it. It would be eyebrow raising. |
| Mr. Thompson: | Okay. So your interpretation of the form is he's doing fine. He's fine. |

Def. Ex. 30 at 6:2-7:7.

Further, Abdeldaim's sole reliance on the forms submitted by Mr. Thompson's medical provider ignores the fact that Mr. Thompson identified the specific accommodation he sought during the meeting which occurred on March 26, 2024. Def. Ex. 23 at 11:19-21 ("I'm looking to

12

continue kind of the accommodation we've had going on for the last three months"); *Id.* at 12:10-11 ("I've been working remotely for the last three months").

83.     Partially disputed. Mr. Thompson does not dispute that Abdeldaim made these statements during the conversation noted, but challenges the truth of these statements. The forms submitted by Mr. Thompson frequently mention that Mr. Thompson is suffering from depression and anxiety and encourages INDG and Mr. Thompson to determine an effective accommodation which takes both Mr. Thompson's diagnosis and symptoms into account. *See* Def. Ex. 18 and 19.

84.     Disputed. While Mr. Thompson did not specify an exact return date in this conversation, he previously indicated to Abdeldaim that he only wanted to work remotely for "a short period" as needed while his stress related to his mother's illness caused an increase in his symptoms related to his anxiety and depression. Ex. A (Pl. Dep. Tr.) at 3:18-4:21.

85.     Disputed. Defendant mischaracterizes the testimony to which it cites. Def. Ex. 27 at 2:22-3:4. Abdeldaim previously discouraged Mr. Thompson from submitting another ADA request, stating that it would be "eyebrow raising" for him to do so. Ex. E at 7:2-5. During the meeting with Abdeldaim on April 8, 2024 in which Mr. Thompson learned his request had been denied by INDG, he asked if he could provide additional information or clarification in support of his request. *Id.* at 10:13 – 12:4. Abdeldaim responded there was no appeal, that there was nothing additional he could clarify, and that it was the company's decision to "decline" his request. *Id.*

86.     Partially disputed. *See* paragraph 85, *supra.*

87.     Undisputed.

88.     Disputed. Mr. Thompson does not dispute that INDG told him he was being terminated for failure to comply with the in-office policy; however, Mr. Thompson believes this

13

rationale to be pretext for discrimination and retaliation by INDG in response to his accommodation for his disability. Compl. at ¶ 95, ¶ 132; *see also* Argument §§ II.C and III.C, *infra*.

89.     Disputed. Defendant's citation does not support its claim, and Mr. Thompson disputes INDG's stated reason for his termination. This portion of Mr. Thompson's testimony reads:

> Q: And you agree that you were ultimately terminated because you didn't return the week of the 15th as required, correct?
>
> A: That is the reason they gave me.
>
> Q: You have no reason to dispute that that was the reason that you were supposed to be in the office. You didn't show up to the office as directed and you were terminated.
>
> A: I mean that's kind of why we're here, right?

Def. Ex. 6 at 159:10-19.

## ARGUMENT

### I.     GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S FAILURE TO ACCOMMODATE CLAIMS.[1]

To state a claim of failure to accommodate under the Americans with Disabilities Act, ("ADA"), an employee must demonstrate "(1) that he was an individual with a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar General Corp.* , 717

---

[1] As pointed out by Defendant in its Motion, analysis of Plaintiff's ADA claims similarly apply to his VHRA claims as a matter of law. *See* Def. Mem. in Supp. of Mot. for Summ. J. at 15, n. 1. Discussion of Mr. Thompson's ADA claims herein is intended to apply to the claims brought against INDG under the VHRA as well.

F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

Contrary to INDG's challenges to Mr. Thompson's failure to accommodate claims, Mr. Thompson is a qualified individual with a disability pursuant to the ADA. His request of an accommodation of telework from INDG was reasonable and would enable him to continue to perform the essential functions of a Product Manager for the company despite the limitations imposed on him by his disability. Mr. Thompson did not decline an alternate accommodation from INDG, as INDG offered him no reasonable alternate accommodation, only instructions on his mandatory return to work over the course of the next week.

A genuine dispute of material fact remains as to whether INDG engaged in an interactive process with Mr. Thompson in good faith following his request for accommodation. INDG neither attempted to understand Mr. Thompson's disability nor worked to find an accommodation that would account for these limitations while permitting him to continue to perform the essential functions of his position. The record reflects ample evidence that INDG, and not Mr. Thompson, is to blame for this breakdown in the interactive process. As a result, INDG bears responsibility for the failure to implement a reasonable accommodation — suitable to both parties — which would enable Mr. Thompson to continue to perform the essential functions of a Product Manager.

A genuine dispute of material fact also exists as to what the essential functions of Mr. Thompson's position were. INDG asserts without justification that in-person attendance was an essential function of Mr. Thompson's position. Testimony, however, indicates that Mr. Thompson was not terminated for performance and that, even when he was in-office at INDG, his meetings with his largely remote team were teleconferences. INDG made a corporate

15

decision to demand a return to in-office work but cannot support that such a policy is *essential* to Mr. Thompson's role.

Finally, genuine disputes of material fact exist as to INDG's alleged non-discriminatory and non-retaliatory reasons for the adverse actions taken against Mr. Thompson. While INDG claims it took these actions due to Mr. Thompson's remote work, Mr. Thompson credibly alleges INDG's true motivation to be discrimination based on disability and retaliation for his protected activity.

### A.  Mr. Thompson is Disabled Under the ADA.

Mr. Thompson is a qualified individual with a disability. He suffers from anxiety and depression, which interferes with his nervous system and affects his major life activities including his ability to maintain focus, think clearly, and process information. INDG attacks this allegation with a singular focus on a box checked on a form by Mr. Thompson's licensed therapist and a narrow definition of disability that is not supported by law. INDG's focus on potential personal motivations of Mr. Thompson for seeking telework as an accommodation only serves to distract from discussion of the company's own legal obligation to accommodate an individual with a disability.

### 1.  *Disability is Intended to Be Defined Broadly Under the ADAAA.*

The ADA Amendments Act ("ADAAA"), Pub. L. No. 110-325, broadened the definition of "disability" with the intent to "make it easier for people with disabilities to obtain protection under the ADA." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting C.F.R. § 1630.1(c)(4)). The implementing regulation clarifies that "[t]he primary objective of attention in cases brought under the ADA should be whether covered entities have

16

complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.*

> ### 2. A Deficiency in Medical Documentation Does Not Alter the Disability Analysis Under the Law.

To the extent Kodaras' selection on the form caused confusion, no one at INDG attempted to reach out to her for clarification or to acquire additional information. If concerned about Kodaras' input on Mr. Thompson's work limitations specific to his position, INDG could have provided Kodaras with a description of the work environment or the essential functions of Mr. Thompson's position to assist with this analysis. It did not. SOMF at ¶¶ 58-77.[2]

INDG informed Mr. Thompson only that the information provided by Kodaras was insufficient, and not only failed — but refused — to give him adequate guidance or instruction to enable him to remedy the deficiency. Def. Ex. 19. When Mr. Thompson promptly provided the company with additional context to clarify the documentation, INDG ignored the new information in reaching its determination. SOMF at ¶¶ 72-73; Def. Ex. 23; Pl. Ex. E at 6-7.

Pursuant to guidance on reasonable accommodations from the Equal Employment Opportunity Commission, "if an employee provides insufficient documentation in response to the employer's initial request, the employer should explain why the documentation is insufficient and allow the employee an opportunity to provide the information in a timely manner." Enforcement Guidance: Disability-related Inquiries and Medical Examinations of Employees Under the ADA ("EEOC Guidance"), 2000 WL 33407181, at *11.

---

[2] Statement of Material Facts ("SOMF") is used throughout to refer to facts set forth in the numbered paragraphs in Defendant's Memorandum in Support of its Motion for Summary Judgment.

References to Plaintiff's Responses to Defendant's numbered paragraphs are marked "Resp. to Def. SOMF."

INDG failed to provide Mr. Thompson an explanation of why the documentation he submitted was insufficient, thereby preventing him from providing documentation adequate to support his request. Def. Ex. 19. It subsequently chose to ignore the specific information Mr. Thompson provided to INDG upon its request. SOMF at ¶¶ 72-73; Def. Ex. 23; Pl. Ex. E at 6-7. INDG cannot play hide and seek with accommodations; it seeks to avoid liability based on a claimed lack of information when it failed to provide Mr. Thompson with the guidance as to what information it needed. INDG then failed to consider the information Mr. Thompson did provide in good faith. Additional discussion on the breakdown of the interactive process may be found in Section I.B.2, *infra*.

> 3. *Any Personal Benefit Mr. Thompson Stood to Gain from Telework is Ancillary to His Need for Accommodation Arising from His Disability.*

The ADA does not permit employers to deny accommodations to an employee where the employee may also derive some personal benefit from the requested change. Mr. Thompson neither violated INDG policy nor neglected his duties by starting a business in South Carolina. Nothing related to his business belies the representations he made to INDG regarding his disabilities or otherwise implies that he is able in a way he claimed to be unable. These matters are entirely unrelated and raised by Defendant only for purposes of distraction.

> 4. *At Minimum, Genuine Disputed Facts Remain as to Whether Mr. Thompson is Disabled Within the Meaning of the ADA.*

Mr. Thompson has credibly testified about his disability and his need to continue to work remotely to alleviate the symptoms he experienced which had been exacerbated by his mother's illness. There can be no doubt that his providers completed his accommodations forms in a confusing manner but, by that same token, INDG chose not to seek clarity from those same providers.

18

At the very least, whether Mr. Thompson suffered a disability as defined by the ADA presents a genuine dispute of material fact that cannot properly be resolved on summary judgment. This Court should deny INDG's motion for summary judgment as to Mr. Thompson's failure to accommodate claims on these grounds.

### B.  INDG Caused the Breakdown in the Interactive Process that Resulted in the Failure to Accommodate Mr. Thompson.

The workplace limitations related to Mr. Thompson's disability arose from the requirement he appear in-person in the office at least four days per week. A logical connection exists between Mr. Thompson's disability and the workplace change he sought: temporary telework. *See, e.g., Kelly v. Town of Abingdon*, 90 F.4th 158, 166 (4th Cir. 2024). Mr. Thompson suffered from depression and anxiety, the symptoms of which had been exacerbated by his mother's medical crisis. His request to be near that family member rather than being required to commute to the office hundreds of miles away, four days a week, logically follows.

As the Fourth Circuit recently reiterated, the interactive process is a two-way street:

> We repeat that the interactive process is a means, not an end. Neither the employer nor the employee can rest on a breakdown in the interactive process without connecting that breakdown to an element of failure-to-accommodate liability. If the employer, for example, sabotages the interactive process to avoid discharging its duty, then the employee can use that sabotage to show that the employer refused an accommodation. But if the employee prevents the employer from understanding her disability, then the employer's duty never arises, and the employee's claim fails.

*Tarquinio v. Johns Hopkins University Applied Physics Lab*, 141 F.4th 568, 576 (4th Cir. 2025).

Upon receipt of Mr. Thompson's request, INDG bore a responsibility to engage in a good faith, interactive process with Mr. Thompson to determine if this, or any alternate request, could effectively address his workplace limitations while allowing him to continue to perform the essential functions of his position. It did not.

19

1.  *Mr. Thompson Initiated the Interactive Process by Making a Reasonable Request for Accommodation.*

INDG relies on a factually inaccurate description of the accommodation requested by Mr. Thompson to argue against its reasonableness. Mr. Thompson did not seek "indefinite" telework, as INDG contends. Rather, he sought temporary telework to the fullest extent possible, while expressing his flexibility and willingness to appear in the office if the need arose. Resp. to Def. SOMF at ¶ 31.

 As this Court has previously found, "[s]ome employees . . . are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts." *Williams v. Virginia Polytechnic Institute & State University*, 451 F.Supp. 467, 476 (E.D. Va. 2020) (quoting *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000)). This is exactly the case with Mr. Thompson as his need for accommodation was inextricably tied to his mother's health—a factor over which he had no control. INDG conflates Mr. Thompson's inability to provide a date certain at which his need for telework will end with a request that is indefinite in nature.

Whether the request made by Mr. Thompson is reasonable is, at the very least, a question of fact for the jury that is not properly resolved on a motion for summary judgment. *See, e.g.*, *Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 416 (4th Cir. 2015) (citing *Pandazides v. Va. Bd. Of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994)). A genuine dispute of material fact as to the reasonableness of the accommodation identified by Mr. Thompson remains, and INDG's motion for summary judgment on these grounds should be denied.

2.  *INDG Sabotaged the Interactive Process to Avoid Its Duties Pursuant to the ADA and VHRA.*

INDG, through Abdeldaim, attempted to discourage Mr. Thompson from pursuing a request for accommodation from the outset. Resp. to Def. SOMF at ¶ 63. Abdeldaim provided Mr. Thompson inaccurate information on when a request for accommodation was appropriate, told him it was unlikely such a request would be granted, and encouraged him to "leave ADA for something else" if "God forbid anything else comes up." Ex. D at 8:21-22.

When problems arose with Mr. Thompson's medical documentation, INDG provided Mr. Thompson with no meaningful guidance on the additional information it required. Abdeldaim's instruction to Mr. Thompson

Abdeldaim told Mr. Thompson she would supplement the information on the second accommodation form with the information provided during the March 26, 2024 meeting, but then failed to do so. *See* Def. Ex. 23 at 15:8 – 16:19. She stated she would reach out to Mr. Thompson for additional information if needed prior to the determination, and she did not. *Id.* at 19:9-19 (Abdeldaim telling Mr. Thompson that if there is additional information needed by the committee while they consider his request, "I - - definitely if there are additional questions, I'll circle back for sure.").

INDG tried to dissuade Mr. Thompson from submitting sufficient medical documentation to support his request and expressly refused to provide Mr. Thompson a description of the information it required from him after his request had been denied. Abdeldaim told Mr. Thompson there was no additional information he could provide, and no way to appeal the decision already made. Def. Ex. 30 at 10:13 – 12:4.

21

### C. In-Office Attendance Was Not an Essential Function of Mr. Thompson's Position.

Although INDG argues in-office attendance to be an essential function of Mr. Thompson's Product Manager position, this assertion is contradicted by record evidence. Under the ADA, essential functions are those "that bear more than a marginal relationship to the job at issue." *Cook v. United Parcel Serv., Inc.*, 2022 WL 1090251, at *3 (4th Cir. 2022).

"Evidence relevant to whether or not a function is essential includes the employer's judgment, written job descriptions, the work experiences of current and former employees, the amount of time spent performing that function, and the consequences of not requiring the employee to perform the function." *O'Meara v. Wormuth*, No. 1:20-cv-1160, 2022 WL 67321, at *7 (E.D. Va. Jan. 6, 2022) (quoting *Serrano v. Cty. of Arlington*, 986 F. Supp. 992, 1000–01 (E.D. Va. 1997); then citing 42 U.S.C. § 12111(8); and then citing 29 C.F.R. § 1630.2(n)(3)). The burden rests with the plaintiff to show he can "perform the essential functions of [his] job with reasonable accommodation." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir. 1994).

INDG has produced no job description showing in-person work as an essential function of Mr. Thompson's position, and INDG's corporate designee testified that in-person work was not among the essential functions of Mr. Thompson's position. SOF ¶¶ 3. Mr. Thompson's direct supervisor testified that independent contractors who held the same title as Mr. Thompson and completed the same duties completed their work for INDG remotely. Ex. I ("Matthews Dep. Tr.") at 22:12-23:16.

INDG has sought to make in-office attendance an essential function of Mr. Thompson's position by fiat, but the law requires more than that. In-office attendance must "bear more than a marginal relationship to the job" to be essential. *Cook,* 2022 WL 1090251 at *3. It did not. Even

22

when Mr. Thompson did work at INDG's office, his meetings were still largely remote. INDG permitted Mr. Thompson to work remotely from South Carolina for nearly four months, from January through April 2024, and during this period, Mr. Thompson's work performance did not suffer.

At the very least, whether in-office attendance constituted an essential function of Mr. Thompson's Product Manager role is a genuinely disputed factual question that cannot be resolved on summary judgment.

## II.    GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S DISABILITY DISCRIMINATION CLAIMS.

A disability discrimination claim must survive summary judgment if the employee produces evidence demonstrating "(1) that [he] has a disability, (2) that [he] is a 'qualified individual' for the employment in question, and (3) that [his] employer discharged [him] (or took other adverse employment action) because of [his] disability." *Jacobs*, 780 F.3d at 572.

Under the *McDonnell Douglas* burden shifting framework, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action at issue. *Id.* If such a reason is provided, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a mere pretext, and that the true reason for the adverse action is discrimination. *Id.*

Mr. Thompson is an individual with a disability capable of performing the essential functions of his position with or without accommodation, as discussed in Section I.A., *supra*. Contrary to INDG's arguments, ample evidence on the record demonstrates Mr. Thompson was meeting the legitimate expectations attendant to his position as Product Manager at the time of the termination. The circumstances surrounding Mr. Thompson's termination raise an inference

23

of discrimination, and record evidence supports INDG's stated reason for his termination having been pretext for unlawful discrimination. As a result, this Court should deny INDG's motion for summary judgment as to Mr. Thompson's disability discrimination claims.

### A. Mr. Thompson Was Meeting INDG's Legitimate Expectations at the Time of His Termination.

INDG does not, and cannot, cite to record evidence demonstrating that Mr. Thompson's work performance was in any way lacking at the time it terminated his employment. Mr. Thompson's direct supervisor , Will Matthews, testified that Mr. Thompson's termination had nothing to do with his work performance. *See* Matthews Deposition Transcript ("Matthews Dep. Tr."), attached hereto as Exhibit I, at 21:20-22:1; 32:1-7; and 33:1-6 (". . . it's unfortunate that we would have to let somebody go for not coming back to the office if their performance wasn't kind of triggering that decision on its own.").

Evan Croen, Mr. Thompson's second-line supervisor, further testified that he had no conversations with Mr. Thompson's direct supervisor about any job performance issues outside of his inability to physically appear in the office, and was personally unaware of any deficiencies in Mr. Thompson's performance. *See* Croen Deposition Transcript ("Croen Dep. Tr.") attached hereto as Exhibit J, at 24:5-9; 25:14-20.

### B. The Circumstances of Mr. Thompson's Termination Raise an Inference of Discrimination.

INDG terminated Mr. Thompson under circumstances giving rise to an inference of disability-based discrimination. INDG's stated reason for its termination of Mr. Thompson is limited to his inability to appear in-person at the office four days per workweek, despite Mr. Thompson having informed them this failure arose by virtue of his disability. Further, as described *supra*, INDG sabotaged Mr. Thompson's efforts to seek an accommodation that would

24

allow him to continue to perform the actual essential functions of his position and eliminate this in-person requirement altogether.

### C. INDG's Stated Reason for Plaintiff's Termination is Pretextual and Does Not Amount to a Legitimate, Non-Discriminatory Reason.

The pretextual nature of INDG's explanation for Mr. Thompson's termination is demonstrated by its willingness to grant exceptions to individuals which allowed them to telework for reasons not related to their need for accommodation, as well as INDG's willingness to permit Mr. Thompson to work remotely without issue until he formally disclosed his disability to Human Resources at the company. Furthermore, Mr. Thompson — as confirmed by his management — was performing his job sufficiently. The *only* reason for his termination was his failure to abide by the in-office policy and this reason itself is not non-discriminatory. INDG's decision to place primacy on a non-essential job requirement over Mr. Thompson's need for an accommodation is discriminatory in and of itself.

### III.    GENUINE DISPUTES OF MATERIAL FACT REMAIN WITH RESPECT TO MR. THOMPSON'S RETALIATION CLAIMS.

INDG terminated Mr. Thompson in response to his engagement in protected activity rather than for any legitimate reason alleged. To make a retaliation claim, an employee "must show (i) that [he] engaged in protected activity and, (ii) because of this, (iii) [his] employer took an adverse action against [him]." *Jacobs*, 780 F.3d at 577. A claim of retaliation is governed by the same *McDonnell Douglas* burden shifting framework described *supra*.

INDG does not challenge whether Mr. Thompson engaged in protected activity, but maintains that it is the first instance of protected activity in which Mr. Thompson engaged prior to his termination — rather than the last — to avoid the obvious fact that it terminated Mr. Thompson only two days after he complained about the company's denial of his accommodation

25

request. The circumstances surrounding INDG's termination of Mr. Thompson, including this temporal proximity, give rise to an inference of retaliation. As with Mr. Thompson's disability discrimination claims, the pretextual nature of INDG's explanation for its termination of Mr. Thompson should preclude this Court from granting its motion for summary judgment with respect to his claims of retaliation.

> ### A. The Circumstances Surrounding INDG's Termination of Mr. Thompson Raise an Inference of Retaliation.

The temporal proximity between Mr. Thompson's engagement in protected activity and INDG's decision to terminate his employment raise an inference of retaliation. Mr. Thompson first engaged in protected activity in or around early January 2024. As provided in Section I.B.2, *supra*, INDG immediately attempted to discourage Mr. Thompson from making his request, sabotaged the interactive process, and ultimately denied his accommodation without recourse prior to terminating his employment for requiring the very accommodation it denied.

Retaliatory animus is also supported by the fact that INDG permitted Mr. Thompson to continue to telework *before* he formally requested remote work as an accommodation, and only began to demand his return to work after he exercised his rights under the ADA to make a formal request. *See, e.g. Jacobs*, 780 F.3d at 578 (finding an employer's history of granting requests for leave to employee before she engaged in protected activity, and beginning to deny them after, to be evidence of retaliatory animus).

INDG, in fact, disciplined Mr. Thompson's direct supervisor, Matthews, for permitting Mr. Thompson to work remotely while his request for accommodation remained pending. Ex. J ("Croen Tr.") at 38:7-14. Evan Croen testified to having been "told by HR that as a result of [Matthews] not acting on this quickly enough and allowing him to - - allowing [Mr. Thompson] to - - to work remotely for the period of time that he did work remotely, that I would need to

26

discipline [Matthews]." As a result, INDG required Croen deliver a letter drafted for him by HR to Matthews and present it as his "first and final warning." *Id.*

    **B.**     **INDG's Stated Reason for Mr. Thompson's Termination is Pretextual and Does Not Amount to a Legitimate, Non-Retaliatory Reason.**

As discussed in Section II.C, *supra*, INDG's stated reason for its termination of Mr. Thompson is insufficient as a matter of law. INDG terminated Mr. Thompson for failing to comply with a policy that was not an essential function of his position because he sought accommodation arising from his disabilities. There is no doubt that he engaged in protected activity throughout the final months of his employment and there is no doubt that he was terminated specifically because of that protected activity.

**CONCLUSION**

Defendant INDG is not entitled to summary judgment with respect to any of Mr. Thompson's claims. Defendant's Motion for Summary Judgment should be denied in its entirety.

Dated: August 4, 2026

                                         /s/
Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
Heather Murray, VA Bar No. 98648
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel:   (703) 791-9087
Fax:   (703) 722-8114
Email: jerlich@erlichlawoffice.com
           kherrmann@erlichlawoffice.com
           hmurray@erlichlawoffice.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 4, 2026, I cased to be served, through the court's electronic filing system, a true and correct copy of Plaintiff Patrick Thompson's Memorandum in Opposition to Defendant's Motion for Summary Judgment to the following:


Laura A. Saracinia, VA Bar No. 96200
Donald E. English, Jr. (Admitted Pro Hac Vice)
Gabriella A. Ravida (Admitted Pro Hac Vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
donald.english@morganlewis.com
laura.saracina@morganlewis.com
gabriella.ravida@morganlewis.com

*Counsel for Defendant*

      /s/

Katherine L. Herrmann, VA Bar No. 83203
The Erlich Law Office, PLLC
1550 Wilson Blvd., Suite 700
Arlington, VA  22209
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: kherrmann@erlichlawoffice.com

*Counsel for Plaintiff*

-28-