# EXHIBIT D

Page 1

RECORDED PHONE CALL

OF

PATRICK THOMPSON

CONDUCTED BY FATIMA ABDELDAIM

January 11, 2024

PATRICK THOMPSON V. BLOOMBERG INDUSTRY GROUP, INC.

CASE NO. 1:25-CV-01867

AUDIO - THOMPSON_ABDELDAIM_01112024_1_.M4A

Transcribed By:  LLoyd Bass

CONFIDENTIAL

INDG_000825

Page 2

R E C O R D I N G

MS. ABDELDAIM:  Hi, Patrick.

MR. THOMPSON:  Hey, how are you?

MS. ABDELDAIM:  Good, how are you?

MR. THOMPSON:  Doing pretty good. Thank you for taking the time to join the call and help me out.

MS. ABDELDAIM:  No problem. I'm trying to turn on my camera. It's doing its own thing. I don't have the cover on. I turned on the camera. I don't know what it's doing.

MR. THOMPSON:  No worries. No worries.

MS. ABDELDAIM:  So forgive me. I'm not trying to be awkward.

MR. THOMPSON:  No, no, no. Not at all. I do -- I'm on meetings pretty much all day, every day. I get the -- sometimes it's nice to not have the camera on. You don't have to face the camera and act like you're, you know, looking at the person the whole time when you're trying to take notes and multitask, et cetera, et cetera. So sometimes it's nice.

MS. ABDELDAIM:  Sometimes, but I promise you I'm not doing it on purpose.

MR. THOMPSON:  No, no, no.

CONFIDENTIAL

INDG_000826

Page 3

MS. ABDELDAIM:  (Crosstalk).

MR. THOMPSON:  I'm not taking any offense.

MS. ABDELDAIM:  I'd love to understand what this thing is doing. Oh, the camera. There I am.

MR. THOMPSON:  All right.

MS. ABDELDAIM:  Okay. It's behaving.

MR. THOMPSON:  Well, I won't leave you hanging. I'll come on as well.

MS. ABDELDAIM:  Thank you.

MR. THOMPSON:  Anyway, so again, thanks for taking the time to meet with me. I'm looking forward to meeting with someone who probably has a lot more experience in this area than I do. But I have been dealing with some family health issues, and I'm trying to figure out how best to support my family while also maintaining my job responsibilities.

MS. ABDELDAIM:  Okay.

MR. THOMPSON:  And what I think I want to do, and I'm open to, you know, your feedback here, but what I think I want to do is apply for an ADA accommodation and be able to ideally work remotely for a short period while I deal and give support, the appropriate support to my family, while

CONFIDENTIAL                                    INDG_000827

Page 4

also being able to work 9:00 to 5:00.

MS. ABDELDAIM:  Well, I'm going to need to understand the specifics. How did we get to the ADA accommodation being the solution? What is happening?

MR. THOMPSON:  I -- like I said, I don't know if it is the solution, so --

MS. ABDELDAIM:  Okay.

MR. THOMPSON:  -- I'm happy to discuss other options. And that's why I wanted to come to you as the expert here, just so I can -- we can explore options together.

MS. ABDELDAIM:  Okay.

MR. THOMPSON:  But I -- my mom's having some health issues specifically with cancer, and, you know, it's something that I would like to be able to, again, be able to attend those appointments, but also just have those life things. And it's had, you know, an impact on me as well, as well as flaring up, you know, my anxiety and my depression. I've had conversations with, you know, my therapists about this, as well as my doctor, and this is one option that I would like to explore. But again, happy to discuss with you.

MS. ABDELDAIM:  Okay. I'm just taking notes.

CONFIDENTIAL                                    INDG_000828

Page 5

MR. THOMPSON:  Sure, yeah, please do.

MS. ABDELDAIM:  So, where is your mom?

MR. THOMPSON:  My mom is in South Carolina.

MS. ABDELDAIM:  I'm putting a cough drop in my mouth, so I don't have a coughing fit.

MR. THOMPSON:  No worries.

MS. ABDELDAIM:  So she's in South Carolina. And how long -- when was she diagnosed?

MR. THOMPSON:  She's --

MS. ABDELDAIM:  I'm sorry about the diagnosis, I know it's not easy.

MR. THOMPSON:  Yeah, no, I appreciate that. She's been fighting it for a little bit over a year now, but things have, you know, taken a turn for the worse. So we got some news just after the holiday. And again, it's just one of those things where you start to appreciate the little things like, you know, eating dinner together, or, you know, watching TV together, just like going to, you know, being there for the moral support, being there to go to the appointments together.

And, you know, that is a priority for me, just given that there's, you know, probably a time limit on it.

CONFIDENTIAL                                                      INDG_000829

Page 6

And then again, with my own health, I just want to make sure that I'm taking care of myself mentally and not going to regret decisions, you know, 10 years from now.

MS. ABDELDAIM:  So, have you considered as it relates to your own health? I feel like there's two separate things happening, right? There's your health versus your mom's health.

MR. THOMPSON:  Uh-huh.

MS. ABDELDAIM:  Or flip it, depending on how you choose to prioritize it, right? I'm not trying to diminish either one. I didn't say them in any specific order or, you know, priority. Is STD not an option here, short-term disability? In any way?

MR. THOMPSON:  I have not looked into that. But I mean, I would prefer to keep working, just because I do have a lot going on as far as teams. And I'm confident that I can balance things. Again, I just need, I feel like a little bit of flexibility in that sense. And I'm trying to explore options there.

MS. ABDELDAIM:  So, SMLA and short-term disability do have an intermittent leave component in that you'll be able to have a certain amount of hours you could pull from

CONFIDENTIAL                                        INDG_000830

Page 7

and leverage that to help, especially if it's in the care of your mom or in your own care to go to your own doctor's appointment. So they do have an intermittent piece. It's not just continuous leave. So if that's something you'd be, you know, you'd be able to pursue -- you'd be willing to pursue, you can, through reliance. And, of course, it's going to require doctor's documentation and things of that nature.

My recommendation would be to go that route, because through FMLA you have job protection, intermittent, of course, you could use whatever amount of hours you have, you are the one that determines when you take it. So I think it allows you that flexibility that you're looking for. And reliance would, you know, obviously give you the paperwork that you need. They'd work with your provider and validate everything and then get you approved.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  My concern is that going the ADA route, I'm not certain it's going to be approved, which will frustrate you, right? And considering the serious nature of what you're describing you're going through with your mom, I do not want to add frustration to what's already a very stressful situation. I'm a very transparent person.

CONFIDENTIAL                                        INDG_000831

Page 8

MR. THOMPSON:  I appreciate that.

MS. ABDELDAIM:  I'm thinking three, four steps ahead in the process. I'm thinking of the committee, the discussions, and I, you know, and then having to potentially come to you with news you don't want to hear. And that's not something I want to do.

MR. THOMPSON:  I appreciate that.

MS. ABDELDAIM:  I want to -- no, no problem. And I did not hear a time limit on this, nor do I think you have one, nor do I want you to have one considering the heaviness of this situation. So my recommendation would be to reach out to and try and do intermittent leave as opposed to trying to do the ADA route.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  That would be my recommendation. It's a benefit to you. You know what I mean?

MR. THOMPSON:  Uh-huh.

MS. ABDELDAIM:  It's a benefit that's there for you by not leveraging.

MR. THOMPSON:  Totally, totally.

MS. ABDELDAIM:  And leave ADA for something else. God forbid anything else come up.

CONFIDENTIAL    INDG_000832

Page 9

MR. THOMPSON: Yep. Yep, that makes sense. So just so I, you know, I can lay out my options and understand them, what is the -- you said it's the short-term STD? Short-term disability?

MS. ABDELDAIM: Yeah, yeah. So as -- let me see. Of course, I didn't bring my other device in here to go and log in to be home because, God forbid, it keeps me logged in for a longer period of time. I got to love how the system just logs you off of everything. On Be Home Under Benefits, there is information on leave. And usually it's STD or FML. And in there, I was going to try and find it for you and send you the link, but, of course, I'm logged out right now. But if you can't find it, just ping me, and I can go on Be Home and find it for you. I can't log in right now because I don't have my OPSA-verified device with me in this room.

But, you know, you could definitely -- it's on Be Home, and it'll give you some preliminary information. But then you go through Reliance, who, of course, is our provider, our vendor, and you'll apply. And they should be able to walk you through everything, open up a claim, give you the documentation you need to, you know, take to your provider. Or if you're -- you're not the one helping to care

CONFIDENTIAL                                          INDG_000833

Page 10

for your mom, right?

MR. THOMPSON:  I would be caring for her, yes. But it wouldn't be full-time. She hasn't lost, you know, her faculties.

MS. ABDELDAIM:  Then I leave it up to you, whatever documentation you give them. I can't dictate what you provide them and what, you know what I mean?

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  Because I heard two separate issues in your conversation with me. I heard your own care --

MR. THOMPSON:  Uh-huh, correct.

MS. ABDELDAIM:  -- right? And I heard the care for your mom. So I don't know what documentation they would need. I don't know which option, if both options are what you're going to pursue. I leave that to your personal decision, your personal thing --

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  -- to address with Reliance. But there is intermittent for you. There's intermittent for care of a family. Discuss your options with them.

MR. THOMPSON:  Okay.

CONFIDENTIAL

INDG_000834

Page 11

MS. ABDELDAIM:  So that way they know which documentation to give you. So that way you can get them vetted through, you know, your provider to fill them out and return to them so that, you know, you can get them to approve it for you.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  And let them know you're not looking for continuous. You're looking for intermittent.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  Okay? And that way they can help you go the correct route.

MR. THOMPSON:  Perfect. Okay. Thank you.

MS. ABDELDAIM:  Okay?

MR. THOMPSON:  I appreciate that.

MS. ABDELDAIM:  No problem. No problem. And if you still decide you want the ADA route, that's fine. I'm just trying to guide you in a direction where --

MR. THOMPSON:  Yeah.

MS. ABDELDAIM:  -- it works more in your favor for an approval than not.

MR. THOMPSON:  What are the -- you know, I totally understand and appreciate that. And thank you because you've

CONFIDENTIAL                                              INDG_000835

Page 12

definitely -- you've probably been here many, many, many more times than I have. But what's the concern around the ADA just, so I'm understanding why that's not a good option?

MS. ABDELDAIM:  So what would you be seeking? Of course, there's still documentation that you would have to go and take to a provider --

MR. THOMPSON:  Uh-huh. Uh-huh.

MS. ABDELDAIM:  -- and have your provider fill it out. And what would you be asking for as it relates to that?

MR. THOMPSON:  From conversations that I've had with, you know, my therapist and my doctor already, it would probably be related to mental health along the lines of anxiety and depression, which I (crosstalk).

MS. ABDELDAIM:  Okay. What would you be asking the company for?

MR. THOMPSON:  My biggest concern right now, and again, part of the reason I want to be official with this is I don't want to be in a space where, you know, the company seeks to terminate because I'm not able to come to the office, you know, four days a week. And I had thought that the ADA would allow me to have an accommodation where that would be, you know, allowed.

CONFIDENTIAL                                        INDG_000836

Page 13

MS. ABDELDAIM:  Then I think I've pointed you in the right direction.

MR. THOMPSON:  Okay. So do the short term. Okay.

MS. ABDELDAIM:  It sounds to me like you're looking for flexibility in job protection, which job protection falls under the FMLA.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  And incrementally, you know, STD and FMLA. Accommodation is, you know, I hurt my foot and I may have to be out for two to three weeks, and I may need to work from home, or I may need some flexibility in my schedule. Can the company help me with that for those two to three weeks?

MR. THOMPSON:  Yeah.

MS. ABDELDAIM:  And you don't have a timeframe. You know what I mean, like?

MR. THOMPSON:  Yeah.

MS. ABDELDAIM:  It's a reasonable accommodation is what that -- the accommodation is for.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  You know, you sound like you're looking for protection for certain -- for an unlimited

CONFIDENTIAL                                                    INDG_000837

Page 14

amount of time right now and flexibility for an unlimited

amount of time.

MR. THOMPSON:  I wouldn't want it to be unlimited, but yeah, I mean, historically, I come into the office five days a week.

MS. ABDELDAIM:  Do you have -- okay. True. And I've heard that. I've heard that. Tell you what, the ADA form is also on the home. Read through it all.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  I pointed you in a direction, but you know best.

MR. THOMPSON:  I don't, though. I'm just trying to understand the options.

MS. ABDELDAIM:  You know your situation best.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  Let me rephrase.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  But I pointed you in the right -- in a direction.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  If you decide after reading everything that, hey, maybe if I'm -- advice isn't what I

CONFIDENTIAL                                        INDG_000838

Page 15

want to follow, I will follow your lead.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  But I'm comfortable with what I've said based on what you've shared.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  But if you choose otherwise, I will support you.

MR. THOMPSON:  Okay. I appreciate that.

MS. ABDELDAIM:  Okay? And advocate accordingly.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  How's that?

MR. THOMPSON:  That's perfect. Thank you.

MS. ABDELDAIM:  Fair?

MR. THOMPSON:  It's fair.

MS. ABDELDAIM:  Okay. Let's keep, you know, dialog open. If you don't find the information on BeHome for either thing, just let me know.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  Once I'm close to my Asda (ph) device, you know, I can log in and just send you some links.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  Okay?

CONFIDENTIAL

INDG_000839

Page 16

MR. THOMPSON:  Wonderful. I appreciate that.

MS. ABDELDAIM:  No problem. If you have any further questions, just don't hesitate.

MR. THOMPSON:  Okay.

MS. ABDELDAIM:  You can ping me by Teams, okay?

MR. THOMPSON:  Okay. Sounds good. Thank you so much. I really, really, truly appreciate you jumping out on me and talking through this with me.

MS. ABDELDAIM:  No problem. I'm happy to help.

MR. THOMPSON:  Thank you.

MS. ABDELDAIM:  And I wish you luck with everything. And again, if I can help in any way, let me know.

MR. THOMPSON:  I appreciate that. Okay.

MS. ABDELDAIM:  You're welcome.

MR. THOMPSON:  Thank you. All right.

MS. ABDELDAIM:  You're welcome. Bye

MR. THOMPSON:  Take care. Bye.

MS. ABDELDAIM:  You too. Bye-bye.

(End of recording)

CONFIDENTIAL                                        INDG_000840

Page 17

C E R T I F I C A T I O N

I, LLOYD BASS, certify that the foregoing transcript is a true and accurate record of the proceedings.

/s/ Lloyd Bass

_____

LLoyd Bass

Approved transcriber

Dated:  June 9, 2026

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

CONFIDENTIAL                                                        INDG_000841