# EXHIBIT H



# Transcript of Stacey-Ann Alecia Jones, Corporate Designee

**Date:** June 9, 2026
**Case:** Thompson -v- Bloomberg Industry Group, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** clientservices@planetdepos.com
**planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

----------------------------------x

PATRICK THOMPSON,                          :

                    PLAINTIFF,       : Case No.:

     v.                              : 1:25-cv-01867

BLOOMBERG INDUSTRY GROUP, INC.,    : (PTG-IDD)

                    DEFENDANT.       :

----------------------------------x


    DEPOSITION OF BLOOMBERG INDUSTRY GROUP, INC.

    By and through its Designated Representative,

STACEY-ANN ALECIA JONES

Washington, District of Columbia

Tuesday, June 9, 2026

1:04 p.m.




Job No.: 637440

Pages: 1 - 72

Recorded By: Gregory Fontana

Transcript of Stacey-Ann Alecia Jones, Corporate Designee
Conducted on June 9, 2026                    2

Deposition of STACEY-ANN ALECIA JONES,

held at the offices of:

MORGAN, LEWIS & BOCKIUS LLP

1111 Pennsylvania Avenue, NW

Washington, District of Columbia 20004

Pursuant to notice, before Gregory Fontana,

Notary Public in and for the State of

District of Columbia.

Transcript of Stacey-Ann Alecia Jones, Corporate Designee
Conducted on June 9, 2026                5

                    P R O C E E D I N G S

THE REPORTER:  Before we proceed, would counsel please state your appearances for the record, including whom you represent?

MR. ERLICH:  Joshua Erlich for Plaintiff Patrick Thompson.

MR. ENGLISH:  Don English for Defendant, and Gabriella Ravida, also for Defendant.

THE REPORTER:  Will the witness please state their full legal name for the record?

THE WITNESS:  Stacey-Ann Alecia Jones.

THE REPORTER:  To confirm the spelling of your name, it is Stacey, S-T-A-C-Y, Ann, A-N-N, Alicia -- Alicia, A-L-I-C-I-A, Jones, J-O-N-E-S?

THE WITNESS:  No.  It's Stacey-Ann, S-T-A-C-E-Y, hyphen, A-N-N, A-L-E-C-I-A, J-O-N-E-S.

Whereupon,

                STACEY-ANN ALECIA JONES,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

Q    Okay.  And to your understanding, how did he communicate that to the organization?

A    The three days remote, two days -- I'm sorry.  The three days in office, two days remote?

Q    Yes.

A    Again, I was not with the organization at that time, so I can't attest to what was communicated at that time.

Q    Okay.  At some point, did the policy -- at some point, did the policy change from three days remote -- or three days in office, two days remote to something else?

A    Yes.

Q    Okay.  When did -- when did that change occur?

A    That change became effective in January of 2024.

Q    Okay.  How was that change communicated to -- to INDG staff?

A    It was emailed by Josh Eastright to all employees.

Q    Got it.  And was there a -- you know,

Transcript of Stacey-Ann Alecia Jones, Corporate Designee
Conducted on June 9, 2026                13

my -- my sense of it is that INDG is -- is an organization that has a system for making policies.  Was there a policy that was issued or was it just a communication to staff or was it something else?

A    It was a communication to staff, and it laid out expectations and became a practice, which in essence was a policy.

Q    Okay.  But to your understanding, there is no formal written policy?

MR. ENGLISH:  Objection.  Asked -- asked and answered.

BY MR. ERLICH:

Q    You can go ahead.

A    Again, it was an email that was communicated to all employees and laid out expectations, became a practice which was interpreted as a policy.

Q    Okay.  Okay.  Were there exceptions made to the return-to-office policy?

A    No.  The expectation was that employees report to the office four days a week and have one

day remote.

Q    Okay.  Does that mean that every single employee reported four days a week?

A    Arlington-based employees were expected to be in the office four days per week, one day remote.

Q    I -- I understand the expectation. What I'm asking is: Does that mean that every single employee appeared in the office four days a week?

A    No.  There were exceptions to folks who were remote by reasons of their employment terms, grandfathered into remote status because that's how they were hired into the organization.

Q    Okay.  So you had some people that were grandfathered in.  Do you know what sort of roles those individuals filled?

A    It's on a case-by-case basis.

Q    Okay.  Do you know if there were any product managers that were grandfathered in in that way?

A    No.

Transcript of Stacey-Ann Alecia Jones, Corporate Designee
Conducted on June 9, 2026                    15

Q    That's a bad question.  That's on me.
Were there any product managers that were
grandfathered in on that -- in that way?

A    Not to my knowledge.

Q    Okay.  Other than people that were
grandfathered in based on the terms at the time of
their hiring, were there any other exceptions?

MR. ENGLISH:  I'm just going to object
to the form.  Looking at that --

MR. ERLICH:  I'll -- I'll rephrase the
-- the question.

BY MR. ERLICH:

Q    Other than the people you just -- you
just discussed, were there any other individuals
who received exceptions from INDG's return-to-work
policy?

MR. ENGLISH:  I'm going to still object
to the form.  Just Arlington-based employees or
just -- are you referring to Arlington-based
employees or anyone that worked in the facility?
There's a -- there's a difference.

MR. ERLICH:  That's -- that's a --

Transcript of Stacey-Ann Alecia Jones, Corporate Designee
Conducted on June 9, 2026                16

that's fair enough.  Let's focus on
Arlington-based employees.

          THE WITNESS:  So can you repeat the
question?

BY MR. ERLICH:

     Q    Sure.  With the exception of the
individuals you mentioned who were grandfathered
in --

     A    Uh-huh.

     Q    -- were there any Arlington-based INDG
employees that had exceptions from the
return-to-work policy?

     A    If there were exceptions, they would've
been brought to -- they would've been brought to
HR for review and consideration.

     Q    Okay.  So you can't tell me if there
were?

     A    I'm -- I'm thinking back to January of
2024.  There -- there -- there are -- there are
Arlington-based employees and there are
individuals who were remote because they were
remote based on their -- their hiring terms.  So I

would consider those as exceptions to the
return-to-work policy four days in office.

Q    Okay.  Now, are those people the same
people that you were referring to a moment ago as
grandfathered in?

A    Correct.

Q    Okay.  With the exception of those
individuals that were grandfathered in --

A    Uh-huh.

Q    -- was every other Arlington-based
employee of INDG at the office four days a week?

A    The expectation was that you're in the
office four days a week.

Q    Again, I -- I'm not asking about the
expectation.  I'm asking about the fact.  Were
there other -- were there folks other than the
grandfathered in employees who were not in the
office four days a week?

MR. ENGLISH:  I'm just going to object
to the form.

You can answer.

MR. ERLICH:  I'm -- I'm speaking of

Arlington-based employees in the context of the conversation we would have.

MR. ENGLISH:  And my objection is just, you're asking her every employee, you know, any day --

BY MR. ERLICH:

Q    I -- we're -- we -- application of the policy is one of our categories, and I'm asking you about application of the policy.

A    Uh-huh.

MR. ENGLISH:  I'll object to form.

But go ahead.

THE WITNESS:  There -- there -- there were exceptions to the in-office requirement for employees, yes.

BY MR. ERLICH:

Q    Okay.  What were situations that gave -- that gave -- gave rise to those -- to those exceptions for Arlington-based INDG employees?

A    So these folks would not be employees, but INDG partners with vendors and organizations who we consider to be contractors or vendors.

They were not subject to the four days in office. And if there was a situation that an employee brought to the attention of HR, we would review it, but the expectation, again, was to be in-office four days per week.

Q    Were there individuals --

A    Uh-huh.

Q    -- who were not grandfathered in and were not contractors, who were INDG employees at the Arlington office who had exceptions from the four-day a week in-person requirement?

A    Yes.

Q    Can you identify any?

A    Are you asking me to identify by name?

Q    Yes.

MR. ENGLISH:  And -- but so -- object to the form.  And I think that this goes beyond the scope of the deposition notice.

But you can answer it.

THE WITNESS:  Jane Warfle.

BY MR. ERLICH:

Q    Okay.  What was Jane Warfle's role?

A    She was in -- I don't know her exact job title, but she was the sole employee responsible for tax research, and was a -- a remote employee.

Q    Okay.  And what was the reason that she was allowed to be remote?

A    Based on business need, and the fact that she was a -- the -- the sole employee responsible for her particular duties and responsibilities.

Q    What do you mean by business need?

A    Her contributions to the organization.

Q    Okay.  Was she remote as a result of an accommodation?

A    No.

Q    Okay.  Do you know an individual named Nicholas Hemdall?

A    I -- I know of the name, yes.

Q    Okay.  Do you know if that person is an INDG employee?

A    Yes.

Q    Is that person an INDG employee?

A    Yes.

Q    Does that person work remotely?

A    Yes.

Q    Does that -- is that person Arlington-based?

A    He is a remote employee.

Q    Okay.  When you say -- when you say remote employee, does he have a specific location where he is based that is other than Arlington?

A    It would be his remote work location.

Q    Okay.  So when discussing Arlington-based INDG employees, you would not include Mr. Hemdall in that?

A    I'm sorry, can you repeat the question?

Q    I said, when discussing Arlington-based INDG employees, you would not -- you would not include Mr. Hemdall as -- as an Arlington-based INDG employee?

A    No.

Q    Okay.  Do you know an individual named Michael Mulvaney?

A    I know of the name.

Q    Okay.  Is Mr. Mulvaney an INDG employee?

A    Yes.

Q    Okay.  Is Mr. Mulvaney an Arlington-based INDG employee?

A    He's a remote employee.

Q    Okay.  Same as Mr. Hemdall?

A    Correct.

Q    Okay.  Do you know an individual named Mark Thorne?

A    I know of the name.

Q    Okay.  Is Mr. Thorne an INDG employee?

A    Yes.

Q    Okay.  Does Mr. Thorne work remotely?

A    Yes.

Q    Okay.  Is Mr. Thorne an Arlington-based INDG employee?

A    He is a remote employee.

Q    Okay.  So let me take one second to -- I want to make sure that we completely clarify what -- what, sort of, remote employee means in this context, right?  So what is the difference from a practical perspective between an -- a INDG

employee based in Arlington and a -- and a remote -- and a remote INDG employee?

A    I'm -- I don't understand your -- your -- your -- understanding of practical.

Q    Sure.  Sure.  Let me approach it this way.  What is the -- the reason, from your understanding, that some individuals have an office that is their home base, and some individuals are categorized simply as remote employee?

A    It would be based on a -- on a variety of items on a -- and each situation would be case-by-case.  And as I've mentioned, it could be due to business requirements and business need. It could be that there are individuals by nature are not in Arlington because they are breaking news and are in locations that they are close to their -- their line of work.  It could be that's how they were hired into -- into their role, so --

Q    Okay.

A    -- it would be on a case-by-case basis.

Q    So it sounds like INDG has employees

all over the place?

A     There are remote employees, but they are certainly the exception, not the norm.

Q     Okay.  Is there a guiding principle or rule that INDG uses in terms of what employees are allowed to be remote and what employees are not allowed to be remote?

MR. ENGLISH:  Object to the form of that one.

Go ahead.

THE WITNESS:  Yeah.  I believe I just responded to that in that there are -- there could be a variety of reasons as to why someone is remote.  They were hired into that.  That was their offer term.  By nature of their job duties and responsibilities, they are physically located in the area that they are, you know, doing their -- their work, so business need, et cetera.

BY MR. ERLICH:

Q     Okay.  Again, when you say business need, what do you mean by that?

A     A reporter in California who's